## Madison Coal Company v. Dominick Caveglia, by next friend.

1.  RELEASE—*when bill to set aside, cannot be maintained.*  A bill to set aside a release for fraud in order that an action at law may be instituted, will not be entertained where it appears, as a matter of law, that the plaintiff could not successfully maintain an action at law.

Bill to set aside release.  Appeal from the Circuit Court of Madison County; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding.  Heard

in this court at the August term, 1904. Reversed and remanded with directions. Opinion filed September 8, 1905.

Wise & McNulty and C. H. Burton, for appellant.

B. H. Canby, for appellee.

Mr. Justice Myers delivered the opinion of the court.

The appellee, Dominick Caveglia, on the 12th day of September, 1900, was employed by the appellant, Madison Coal Company, and worked in its coal mine number 2, in Madison County, Illinois. He was at that time past sixteen years of age. His work was to stand on the south side of the shaft at the bottom of the mine and pull the empty boxes off the cages onto two tracks called the short tracks. He had been engaged in this work for about two and a half months prior to the date mentioned. The shaft was a double compartment one, with two cages, called the east and west cages respectively. North of the shaft, at the bottom, were tracks connecting with the cages and upon which the loaded coal cars were brought to the cages to be conveyed to the top of the mine. On the east side of the shaft there was a track known as the "empty," or run-around track. This ran in a northerly and southerly direction past the east side of the shaft. On the south side of the shaft were two tracks, as stated above, called the short tracks, running from the south side of the cages. One of these extended from the west cage in a southeasterly direction to a connection with the "empty," or run-around track. The length of this track was about twenty-seven feet. The other of these tracks extended from the east cage in a southwesterly direction until it intersected said west cage track. The length of this track from the cage to its intersection with said west cage track was about fourteen and one-half feet. At the point where the two short tracks converge, fourteen and one-half feet south of the cages, the distance from the east rail of the east cage track to the west rail of the run-around track, was at the time Caveglia was hurt, from three and one-quarter to

three and six-tenths feet.    The tracks are two feet wide and the cars four feet six inches wide.

On September 12, 1900, Caveglia was working on the south side of the cages, pulling cars off the cages onto the short tracks.    Two empty cars were standing on each of the short tracks, and while he was standing between the rails of the east cage track waiting for a descending cage, one Hauck, a driver, came from the south on the empty or run-around track, with four empty cars drawn by a mule, proceeding at a lively gait, north.    When the last car in ·his string of four cars reached a point nearly opposite the junction of the east and west cage, or short tracks, the rear car of the string jumped the track to the west and struck the car standing on the east cage track farthest from the cage, driving the two cars standing on the east cage track towards the cage and against Caveglia, knocking him into the sump or space immediately under the cage, which was at that time descending and came down upon him, whereby he sustained severe injuries.    Appellee is an orphan and lived with his stepfather, John Zadra.    Within three or four months of the injury, Zadra and appellee entered into negotiations with the appellant company through one Johnson, its agent, by which a settlement was agreed upon and a full release of the company from all damages caused by said injuries was signed by Zadra and appellee.    To effect the settlement and bind appellee in the agreement, a suit was instituted against the company by Zadra, as next friend. The declaration was prepared by appellant's attorneys and signed by Zadra as next friend, and by appellee.    The ·defendant filed a plea of not guilty.    The parties then went before the court and Zadra, the stepfather, was duly appointed next friend for appellee, and judgment by consent was entered against defendant in favor of plaintiff for $302.70, which was immediately paid by appellant, and duly satisfied of record by both Zadra and appellee.

The purpose of the bill in this case is to repudiate the settlement and set aside the judgment entered pursuant thereof in order that appellee may prosecute to judgment

another action at law against appellant for the alleged in-
juries. It does not appear from the representations con-
tained in the bill nor in the evidence found in the record,
that appellee ever had or could maintain an action at law
against appellant for the injuries sustained. As stated in
the bill he was injured " by reason of the shortness of the
tracks," meaning the cage tracks or those over which empty
cars were run from the cage to the empty·or run-around
track. In a further· statement of the circumstances and
manner of the injury, it is represented in the bill that appel-
lee, in performance of his duty, stood at the south side of
the shaft at the bottom of the mine to pull the boxes or
cars from the cages onto the short tracks; "that on each
of said tracks there was then standing two empty boxes,
and that by reason of the shortness of said tracks said boxes
projected over said switch, or came so near said empty track
that other cars which were being driven along said empty
track, came in contact with the cars standing on said short
track, causing them to be pushed back towards the shaft,
thereby striking your orator    *    *    *    and knocking him
under the cage." From appellee's statement of the facts in
argument, and from the undisputed evidence, the collision
of cars by which appellee was struck and fell into the sump
under the descending cage was caused by the derailment
of the car on the run-around track. But for this there
would have been no collision and consequently no injury.
The space between the short track and run-around track
was sufficient for the cars to pass while on the track. It is
not stated, suggested or proven that the colliding car was
derailed by reason of defective construction or material or
failure to keep in repair the run-around track. Appellee's
counsel contends that appellant was negligent and failed
in its duty in not providing a safe place for appellee to
work, and that the shortness of the cage tracks and their
near proximity· to the run-around track at the point where
the collision occurred, is evidence of such negligence. In the
case of St. Louis Stock Yards v. Burns, 97 App. 175, this
court, applying the doctrine announced by the Supreme

Court in C. & E. I. R. R. Co. v. Driscoll, 176 Ill. 330, held, that the proximity of the tracks in the construction of a switch yard involves an engineering question to which the law which requires an employer to keep its tracks, machinery and appliances in reasonably safe repair, has no application.   Again, in M. & O. R. R. Co. v. Healy, 100 App. 586, we held that the construction and proximity of tracks in a railroad yard used by railroad employees in their daily work is a question of engineering, and it is not for the jury to say whether their closeness is negligence on the part of the railroad company.   In line with the doctrine of the cases above cited, it is held as a matter of law, in this case, that appellant may not be held to negligence and liability in damages to appellee by reason of the shortness of the cage tracks or their proximity to the run-around track. The risk of operating cars upon the tracks as they were laid and constructed in the mine was incidental to the business and assumed by appellee in accepting employment.   If, as contended by appellant's counsel, the injury to appellee was due to the negligence of Hauck, the driver, in failing to stop the mule when the rear car left the track, then the further contention that Hauck was a fellow-servant, for whose negligence appellee may not recover, must be allowed, for this so clearly appears from the undisputed evidence that it becomes a question of law for the court and not a question of fact to be submitted to the jury.

From the conclusions reached upon the questions of appellant's liability to appellee in an action at law upon the undisputed evidence, it will not be necessary to discuss other questions argued by counsel further than to say, that the settlement effected by the judgment seems to have been fairly and understandingly made and entered into by the parties, that it had the sanction of the court to whom the facts and circumstances were fully presented, and that there is no evidence whatever tending to show that appellant's agents or attorneys sought or obtained any unfair advantage of the complainant or his stepfather, who was acting in his behalf.   The bill should have been dismissed

for want of equity. The decree of the Circuit Court will therefore be reversed and the cause remanded, with directions to dismiss the bill.

*Reversed and remanded with directions.*