(No. 6287—

P. K. KURSON, INC., Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed August 18, 1975.*

SORLING, CATRON and HARDIN, by STEPHEN A. TAGGE, Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; DOUGLAS G. OLSON, Assistant Attorney General, for Respondent.

BURKS, J.

This claim arises out of a contract entered into with the State by P. K. Kurson, Inc., a Springfield construction contractor (hereafter referred to as Kurson). The contract was to expand the existing parking facilities at the Division of Highway Building located on By-Pass 66 in Springfield. (Contract No. H.B.-1739; Sangamon County; Administration Bldg. Parking Lot.)

The site of the new parking lot was an area covered with trees. Kurson had to remove and dispose of the trees as part of his contract, and this was the first portion of the work that had to be completed. The contract authorized him to burn the trees and brush on the job site. The State later refused to allow the burn-

ing. To comply with the State's order, Kurson was forced to employ a subcontractor with a "chipper" to chip and mulch the trees on the job site. This work was done by James M. Canfield Contracting and Trucking, Inc., and Kurson paid this subcontractor $2,336 for this extra work.

The contract provided that the trees were to be removed in accordance with Section 201 of the Standard Specifications for Road and Bridge Construction, adopted August 1, 1968. Section 201 is titled "Clearing, Tree Removal, Hedge Removal." Section 201.08 is as follows:

Section 201.08 Disposal of Materials. This work shall be done in accordance with Article 202.03.

The pertinent portion of Section 202.03 is as follows:

All trees and materials that can be destroyed by burning shall be disposed of within the right-of-way at locations designated by the Engineer in such a manner that public or private property will not be damaged or endangered. No burning of surplus materials will be permitted in or near areas designated as natural scenic areas that are to remain undisturbed.

Kurson claimed that the chipping and mulching, in place of burning, was an extra expense for which he should be compensated in the amount of the actual cost, $2,336.

In discussions and correspondence with Respondent's engineer, the State said it would allow Kurson to burn the material if he could get permission from the Illinois Pollution Control Board to do so. Kurson was unable to do this. The State also tried unsuccessfully to obtain said permit. Respondent felt obliged to decline payment of this extra cost since Section 107.04 of the Standard Specifications made it Kurson's responsibility to obtain this permit. The said Section 107.04 reads as follows:

Permits and Licenses. The Contractor shall procure all permits and licenses, pay all charges and fees, and give all notices necessary and incident to the due and lawful prosecution of the work.

Respondent concedes the merits of this claim and apparently would have recommended payment of the extra expense incurred if the contractor had submitted a written denial from the Pollution Control Board of his request for a permit to burn the material. This is confirmed in the following quotations from a letter to the Claimant dated June 10, 1970, from Respondent's District Engineer, C. E. Johnson:

Tree Removal. It is my understanding that you were advised on June 3, 1970, at a jobsite meeting that burning of trees would not be permitted on the property. Again on June 5, 1970, you were instructed that the tree and brush removal must be trucked away from the property unless you provide some method of chipping or composting. The resulting material could be incorporated with the earth.

The Department has tried without success to obtain a permit to burn the material on the jobsite. You may on your own initiative make an attempt to obtain a similar permit to allow burning. If you have a written denial from the proper authorities for this request, we would recommend for approval by the Bureau of Construction that the chipping or composting be allowed as an extra expense to this section.

Respondent concedes that Claimant's brief has accurately stated the applicable law in this cause, and we granted Respondent's motion to waive filing a brief.

We find that Claimant's failure to obtain a permit to burn the trees from another State agency, making it impossible to perform this phase of the contract as contemplated by the parties, is not sufficient grounds to deny payment of Claimant's extra expense thereby necessarily incurred.

The intention of the parties to a contract should be determined from the language employed in the contract. *Schek v. Chicago Transit Authority, 247 N.E.2d 886, 42 Ill.2d 362; I.L.P. Contracts §213.* The language in this contract shows specifically that the parties intended the trees to be burned.

There was uncontroverted evidence in the record that the construction practice in Sangamon County in May and June of 1970 was to burn the trees at the job site.

The State prepared the contract including the special provisions and the Standard Specifications. Any ambiguity in a contract should be construed against the party preparing the contract. *Suess v. Jousma, 259 N.E.2d 349, 122 Ill.App. 415; I.L.P. Contracts §222.* The specific provisions of a contract will prevail over general provisions of the contract. *Olson v. Rossetter, 71 N.E. 2d 556, 330 Ill.App. 304; I.L.P. Contracts §222.* The specific agreement between these parties was to burn the trees. Since this method of disposal could not be used, the contract was changed. The chipping process required was different and more expensive than the contract specified. This was a change, an extra, for which Claimant is entitled to be paid, as contemplated by the contract itself.

The amount of the extra expense incurred by the Claimant is not in dispute, and Claimant is entitled to an award of $2,336.

In response to the Court's recent inquiry, we were advised by the Secretary of State's Corporation Division that the Claimant, a Delaware corporation, was authorized to do business in Illinois, June 16, 1969, and that its authority was revoked November 15, 1972. (File No. 494-8; Box #4951 in the archives.) The parties to this claim have stipulated that the Springfield Marine Bank will receive all sums recovered in this action, as it has a security agreement covering Claimant's accounts receivable. Counsel for the Claimant has advised the Court that an award made to the Claimant can be properly negotiated.

Claimant is hereby awarded, as an amount due under a contract, the sum of Two Thousand Three Hundred Thirty-Six Dollars ($2,336).