(No. 90-CC-2489-

ROBERT DERENSKI, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed July 31, 1992.*

ABRAMS & CHAPMAN, for Claimant.

ROLAND W. BURRIS, Attorney General (STEVEN SCHMALL, Assistant Attorney General, of counsel), for Respondent.

## OPINION

FREDERICK, J.

Claimant in his complaint seeks the sum of $2,245 from the State for breach of contract. Claimant alleges that he entered into a contract with the Department of Conservation for the rental of a boat slip at North Point Marina for the 1989 boating season. Respondent was unable to furnish the slip at the time agreed upon due to what the State has claimed to be an act of God. The Department of Conservation has refused to refund to Claimant the $2,245 deposit made by Claimant for the boat slip.

The case was tried by Commissioner Weinberg.

### The Facts

Claimant, Robert Derenski, owned a 40-foot Viking Sport Fisherman boat. He had docked the boat at the Bell Harbor Marina in Racine, Wisconsin, from the time he purchased the boat. In 1988, he received fliers regarding a proposed marina to be called North Point Marina. He also saw an advertisement in the paper about the marina. North Point Marina is in Illinois, just south of the Wisconsin border. Claimant investigated the proposed marina because it was closer to his home in Glenview, Illinois, than was the Racine, Wisconsin, dockage. Claimant contacted the North Point Marina sales office in 1988 and obtained a brochure. The brochure in its very first

sentence says "North Point Marina is ready." The brochure in two separate statements goes on to say the marina would open in April of 1989.

Claimant made an application for a slip in September of 1988. When he sent in his application, he requested a 45-foot slip and also sent in a $200 check for the nonrefundable deposit which had to accompany the application, according to the application form. A short time later Claimant received a letter from the Department of Conservation acknowledging his application and deposit. Claimant's slip assignment was noted on the receipt copy of his application which was returned to Claimant by the Department of Conservation. The slip assigned was slip No. 39. In December of 1988, Claimant made a second application as Claimant thought he would be selling his 45-foot boat and obtaining a larger boat. The second application was for a 55-foot slip and cancelled the first slip. The new slip was slip No. 17.

In December of 1988, Claimant received another letter from the Department. This letter indicated that the project was "on schedule" and an opening of April 15, 1989, was anticipated. The letter also indicated that 50% of the annual rent less the $200 deposit was due by March 1, 1989.

On January 16, 1989, the Claimant signed the Illinois Department of Conservation Harbor Occupancy Agreement for North Point Marina. The Department approved the agreement on March 2, 1989. The agreement signed by the parties fails to indicate the year the rental is for and fails to state the total rental for the slip. The agreement does state that one-half payment for vessel accommodations must be remitted by March 1. If no payment is received by the State by March 1, the agree-

ment becomes null and void and all deposits are forfeited to the State. A second payment of one-fourth of the actual fee is to be paid by May 1 and a final payment of one-fourth the total fee is to be paid by July 1. The agreement then states "Slip payments are not refundable." The agreement also adopts the Department of Conservation Administrative Rules found in title 17 of the Illinois Administrative Code. Claimant was required to pay the initial $200 deposit, $1,650 prior to March 1, 1989, $560 by May 1, 1989, and $560 by July 1, 1989, pursuant to the agreement.

On or about March 15, 1989, Claimant received a letter from the Department that indicated the February freeze had delayed construction. The letter indicated the commercial basin would be open by April 15, with the recreational basin open soon thereafter. On or about April 3, 1989, Claimant received another letter from the Department of Conservation. This correspondence indicated that continuous basin ice conditions in February and March prevented the installation of docks in the marina and that the project was over a month behind schedule. The Department indicated a May 1989 opening for the marina for all but commercial boats. Noncommercial boats such as Claimant's were further notified that slips would open after May 1, 1989, as docks were installed. However, services might not be available and boats may be given temporary slip assignments until dock installation was complete.

The marina indicated that it was understood that these events would cause people to adjust their plans. In recognition of the inconvenience, everyone in the recreational basin received an additional 10% discount on all slips. Claimant was offered a temporary slip in the commercial basin but Claimant found this unacceptable. The

commercial fishermen come in at 4:00 a.m. and make noise, which would have been unacceptable for his family.

Claimant's slip was in the recreational basin. His slip was not ready on May 1, 1989. The marina indicated the slip would be ready shortly but it was not made ready until some time in June, with services on the dock available some time thereafter. Because of the delay, Claimant obligated himself for another year's dockage at the Bell Harbor Marina in Wisconsin for the summer of 1989 and paid that marina $2,800. Claimant did in fact pay the Illinois Department of Conservation $200 on September 10, 1989, $1,650 on March 1, 1989, and $395 on May 2, 1989, for a total of $2,245. Claimant requested the Department return to him the $2,245. The Department refused to refund the Claimant's payments but offered to credit $1,850 on dockage for the 1990 boating season for a slip of Claimant's choice, depending on boat length and availability. Claimant declined the marina's offer.

## The Law

This is a case of contract interpretation. The State prepared the contract at issue and therefore any ambiguities in the contract should be construed against the party preparing the contract. The specific provisions of the contract will prevail over the general provisions of the contract. (*Kurson, Inc. v. State* (1975), 31 Ill. Ct. Cl. 78.) When the brochures were published, when the Claimant's applications were made, and when the agreement was signed, neither party contemplated that the boat slip would not be available and that construction would be delayed. (*Wieboldt Stores, Inc. v. State* (1976), 31 Ill. Ct. Cl. 336.) It is undisputed that the boat slip that had been assigned to Claimant was not ready for use on April 1,

1989, and was not ready until late June. For whatever reason, the State did not perform according to the understanding of the parties. The State raises an "act of God" defense. (*Barry v. State* (1965), 25 Ill. Ct. Cl. 121.) However, there is no proof before this Court as to whether or not ice flows were taken into account in the State's construction schedule. For an "act of God" defense to succeed, the State must prove that the State was completely free from fault. In the instant case, the State offered no proof as to this issue of whether the State had considered ice problems in its construction schedule.

The State's offer to apply the 1989 monies paid by Claimant to the 1990 boat slip fees indicates the State knew it had not performed the 1989 contract. The State's position is that the language in the agreement stating that slip fees are not refundable is the bar to refunding the money to Claimant. However, the situation that arose (the slips being unavailable) was not contemplated by the Respondent. This Court has long held that the language of a contract is not controlling in determining the parties' agreement when other circumstances are also relevant in determining the agreement. *Child Development Centers, Inc. v. State* (1984), 36 Ill. Ct. Cl. 138.

It is the finding of the Court that the nonrefundability of the slip fees clause only contemplated the situation where the slips were in existence and the Respondent attempted to back out of the agreement. Any other interpretation would be unconscionable and could even lead to situations where the State could lease the same slip to any number of boats and refuse to refund any fees.

A review of the exhibits also shows that an ambiguity exists in the nonrefundability clause. (*McDonnell-Douglas Automation Co. v. State* (1983), 31 Ill. Ct. Cl. 47.) The

application form prepared by the Department states that "A $200.00 non-refundable deposit must accompany the application." The contract prepared by the Department states in part, "If no payment has been received by said date (referring to the March 1 payment), this agreement will be null and void, and any deposits paid shall be forfeited to the Department of Conservation * * *." After the paragraph on forfeiture, a new paragraph with a single sentence states, "Slip payments are not refundable." The contract does not state that slip payments are forfeited to the State as are deposits. The Claimant did make the March 1 payment. This ambiguity must be interpreted adversely to the party drafting the contract and no forfeiture is called for under the facts of this case.

A review of 17 Illinois Administrative Code, ch. 1, sec. 220.10 *et seq.*, which were incorporated into the agreement, indicates the slips were to be generally available from April 1 to October 31. The Code also indicates only the $200 deposit is nonrefundable. (17 Ill. Adm. Code, sec. 220.60(b) (2).) The only other forfeiture provisions in the Code under section 220.30(a) (6) and section 220.30(a) (10) (A) have no factual relation to this case, as Claimant was willing to accept the slip which was first offered to him and Claimant did comply with the provisions of his permit and pay his slip fees.

The State breached the agreement by failing to provide the Claimant with the boat slip he had contracted for and an award should be made because of the State's failure to perform the obligations of the contract. *Duffy Co. v. State* (1981), 34 Ill. Ct. Cl. 69.

Claimant paid $2,245 for a boat slip he did not receive pursuant to the agreement of the parties. The $200 deposit was nonrefundable. For the foregoing rea-

sons, Claimant is awarded the sum of $2,045.